78 N.J. Super. 588 (1963)
189 A.2d 838
PENNYTON HOMES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
PLANNING BOARD OF THE BOROUGH OF STANHOPE AND THE MAYOR AND COUNCIL OF THE BOROUGH OF STANHOPE, ETC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 18, 1963.
Decided April 4, 1963.
*590 Before Judges GOLDMANN, FREUND and FOLEY.
*591 Mr. Lewis Stein argued the cause for appellants (Mr. Milford Salny, attorney).
Mr. Herbert S. Glickman argued the cause for respondent (Messrs. Scerbo, Hegarty, Mintz, Glickman, Kobin & Howe, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
Defendants appeal from a judgment of the Law Division entered on cross-motions for summary judgment. Plaintiff's motion was granted; defendants' motion denied.
On March 30, 1959 the Planning Board of the Borough of Stanhope approved a preliminary development plat of Pennyton Homes and recommended to the mayor and council that it be approved. On the same day a resolution was adopted by the governing body granting tentative approval pursuant to N.J.S.A. 40:55-1.18.
The plat, as approved, displayed tentative plans for the subdivision of an 87-acre tract into 197 residential lots, upon which 196 houses would be erected. As is customary in large developments of this kind, plaintiff sought final approval of its plat in sections. Such approval was granted by the borough as to Sections 1 to 6, inclusive, on dates ranging from October 20, 1959 to January 26, 1961.
On November 27, 1961 plaintiff submitted plans for the final approval of the seventh and last section of the subdivision. This application provided that the paved portion of the rights-of-way, 50' in width, would be 30' wide. Provision for sidewalks was not included. An open drainage ditch or stream which ran through the tract was to be maintained in Section 7. The foregoing was in accordance with the preliminary plat initially approved, with the single exception that the ditch or stream was to be relocated in a position slightly different from that shown thereon.
On December 11, 1961 the plat was considered by the planning board, and on January 8, 1962 the application for *592 final approval was rejected by that body. By letter dated January 11, 1962 the board informed plaintiff of its decision, stating that it would "require the installation of a 34' wide pavement and 4' wide sidewalks in accordance with the amendment to the Stanhope subdivision ordinance adopted March 28, 1960, and also because we feel that in the interest of public safety we must require the stream to be enclosed in pipe."
Plaintiff appealed this determination to the mayor and council, and at the conclusion of a hearing on February 19, 1962 the governing body affirmed the planning board determination, substantially for the reasons expressed in its letter of January 11. Plaintiff thereupon brought a proceeding in lieu of prerogative writs to compel final approval of Section 7 without any additional improvements, and, as noted, the Law Division granted the requested relief on plaintiff's motion for summary judgment.
The Stanhope subdivision ordinance, enacted August 29, 1955, originally required that all streets should have a minimum right-of-way width of 40', a minimum graded width of 28', and a minimum paved width of 20'. It was amended on November 24, 1958 to increase these dimensions to a minimum right-of-way width of 50', and a minimum paved width of 30' between curbs. Neither of these ordinances contained a requirement that sidewalks be installed. The amendatory ordinance of March 28, 1960 provides in pertinent part:
"Article VII  Improvements.
1. Prior to the granting of final approval the subdivider shall have installed or shall have furnished performance guarantees for the ultimate installations of the following:
(a) Streets: All streets shall be constructed in accordance with the following standards and specifications:
1(a) 1. All streets and roads shall have the following widths:

* * * * * * * *
All other streets 50' right-of-way and 34' paved width between curbs.
All streets to be graded for the full width of the right-of-way.

* * * * * * * *
1(a) 9(c). Sidewalks: Concrete sidewalks shall be installed on both sides of the street right-of-way, of a minimum thickness of 4 *593 inches. The sidewalks shall be 4 feet wide with a 3 foot 6 inch space between the walk and the curb."
The initial question presented to us is whether the provisions of the March 28, 1960 ordinance, increasing the width of the pavement from 30' to 34' and requiring the installation of sidewalks, was enforceable against plaintiff in view of the fact that it had received tentative approval of a plat on March 30, 1959 providing for 30' pavements, and not requiring sidewalks.
Resolution of this question necessarily requires us to construe pertinent sections of the Municipal Planning Act, N.J.S.A. 40:55-1.1 et seq. In doing so, we are mindful that questions of interpretation and construction of the statute must be resolved in favor of governmental authority when it is reasonably possible to do so, in order to serve the maximum protection of the primary public interest, as well as that of individuals who become the ultimate owners of the subdivider's final product. Levin v. Livingston Tp., 35 N.J. 500, 507 (1961). This does not mean that the legitimate interests of the developer are to be forgotten. He is entitled to substantive and procedural fairness, having in mind the primacy of the public interest and the principal objectives of the regulation. Ibid.
N.J.S.A. 40:55-1.18 provides a two-step procedure for the final approval of subdivision plats. The objective of the procedure therein outlined, and its place in the overall scheme of community planning, are exhaustively treated in Levin, supra, and need not be restated at length. Suffice it to say, for present purposes, that N.J.S.A. 40:55-1.18 is designed to provide a means of land control by the municipality which will aid in the orderly development of the community, with due regard being given both to the public good and welfare, and the economic interests of the developer. Thus, the statute contemplates, initially, the submission of a preliminary proposal in the form of a plat which, subject to planning board requirements, will depict the general condition of land use. Tentative approval thereof confers upon *594 the applicant, for the ensuing three-year period, the following rights: (1) the general terms and conditions upon which the tentative approval was granted will not be changed, and (2) the applicant may submit on or before the expiration date the whole or parts of said plat for final approval.
N.J.S.A. 40:55-1.20 defines  but without limitation  the "general terms and conditions" mentioned in N.J.S.A. 40:55-1.18, which may not be changed during the three-year period following the granting of tentative approval. This section of the statute provides in part:
"In acting upon plats the planning board shall require, among other conditions in the public interest, that the tract shall be adequately drained, and the streets shall be of sufficient width and suitable grade and suitably located to accommodate the prospective traffic, * * *."
While the rights of the applicant to perform in accordance with the general terms and conditions upon which the tentative approval is granted may not be abridged through a unilateral expansion of such general terms and conditions by the municipality, the governmental authority is not denied the right to demand of the developer "improvements" as a prerequisite to the granting of final approval, if its subdivision ordinance provides for such improvements. N.J.S.A. 40:55-1.21 provides:
"Before final approval of plats the governing body may require, in accordance with the standards adopted by ordinance, the installation, or the furnishing of a performance guarantee in lieu thereof, of any or all of the following improvements it may deem to be necessary or appropriate: street grading, pavement, gutters, curbs, sidewalks, street lighting, shade trees, surveyor's monuments, water mains, culverts, storm sewers, sanitary sewers or other means of sewage disposal, drainage structures, and such other subdivision improvements as the municipal governing body may find necessary in the public interest." (Emphasis added.)
Plaintiff takes the position that the right of the municipality to demand the improvements specified in 1.21 depends upon the existence of the ordinance mentioned *595 therein, in advance of the application for tentative approval. Plaintiff cites a portion of the opinion in Levin, supra, in which the court reconciled the provisions of 1.20 and 1.21:
"The legislative design is plain. It has said that, in addition to requiring basic and necessary general terms and conditions, to be determined on the application for tentative approval, the municipality may also automatically and in all cases require the developer to install or provide for certain specific improvements, which will become public property and the subject of municipal maintenance in the future and which otherwise the municipality would have to construct at public expense, provided they are set forth in the ordinance in advance. This assures the protection of the public interest in this respect and at the same time sufficiently advises the developer of the kind of thing he must install so that he may make his broad financial and other plans and estimates accordingly." 35 N.J., at pp. 514-515.
It is true that the court in stating that the requirements must be "set forth in the ordinance in advance" did not say "in advance" of what, i.e., tentative approval, or final approval. But the fact that 1.21, the section in which the quoted words appear, is concerned with improvements which may be demanded after tentative approval has been obtained, leads us to conclude that it is sufficient if, as is here the case, the enabling ordinance is passed prior to the application for final approval. The plain fact is that when plaintiff sought tentative approval it knew that the municipality could, at any time, adopt an ordinance which would require the installation of sidewalks. There was no guarantee that such an ordinance would not be adopted, and plaintiff had no right to assume that if such an ordinance was enacted and sidewalks were required, they would be regarded as a general condition under 1.20. A determination of the character of the requirement  "general condition" vis-a-vis "improvement"  should not be made to depend upon the time when municipal action authorizing it is taken, any more than municipal interpretation should alter its essential character. Moreover, in service to the fundamental purposes of the Planning Act the municipality should not be precluded from making desirable changes in construction specifications for improvements prior to final *596 approval unless the enabling legislation compels such a result. Levin, supra, at p. 516.
Hence, the determinant of the first question presented is whether the requirement that the pavement in Section 7 be 34' in width and that sidewalks be installed within the rights-of-way therein, should be regarded as falling within the "general terms and conditions" defined in 1.20, or whether they should be viewed as "improvements" embraced by 1.21. If the former is the case, Stanhope was without authority to enforce the ordinance of March 30, 1959. On the other hand, if the street widening and the sidewalks are deemed "improvements," defendants' right to enforce such ordinance is vindicated.
One of the purposes of the preliminary approval under 1.20, granting the developer the three-year protection from change, is to enable a developer to determine whether the most financially significant items of layout and the like, which will be required as a condition to final approval, make it economically feasible for him to proceed. Levin, supra, at pp. 511-512. Probably the prime considerations of the developer are how much land will be reserved for his use, and how many lots will be available for building purposes. Thus, the emphasis in 1.20 is on layout  width and location of rights-of-way, for example  which in large measure controls the total area of land reserved to the developer, and enables him to plan his development and anticipate basic cost figures in accordance with the lot sizes agreed upon. Properly, the statute protects him for a three-year period from, among other things, layout changes which, by increasing the area of rights-of-way or the size of lots (compare Hilton Acres v. Klein, 35 N.J. 570 (1961)), reduce the quantum of land reserved for his use in the preliminary plat. Hence, 1.20 is directed to the general scheme of the development, while 1.21 is geared to the details of its completion.
Significantly, the widening of the pavement from 30' to 34' does not affect the layout of the development in any way, nor does it deprive the developer of the use of the land reserved *597 to it by the preliminary plat. Consequently, we think it clear that the context of 1.21, in which "pavement" appears, embraces a right in the municipality, subject to ordinance, to condition final approval upon the requirement of increased width of the pavement.
As noted, N.J.S.A. 40:55-1.21 specifically places sidewalks in the category of improvements which may be required prior to final approval.
Plaintiff argues also that the municipality should be estopped from enforcing the provisions of its amendatory ordinance. Plaintiff's principal contention in this respect is that, if the requirements now sought to be imposed are validated, the cost of developing Section 7 will be increased by approximately $50,000, or about $600 per house. In the opinion of its president, the houses will not be saleable at the increased price. We note that model homes have been constructed and furnished at a cost of $25,000 each, and find it difficult to believe that an increase in price of $600 would seriously affect the saleability of homes of this type. Moreover, no development work whatever has been done thus far in Section 7. Consequently, defendant's apprehension sounds in the diminution of future profits, rather than fear of actual or probable money losses.
The law does not in ordinary circumstances regard with favor the application of the doctrine of equitable estoppel against municipal action. Compare Levin, supra, 35 N.J., at p. 520, with Tremarco Corporation v. Garzio, 32 N.J. 448 (1960). We perceive no reason for invoking the doctrine in this case.
We reach a different conclusion with respect to the directive that the stream be enclosed by piping. The ordinance adopted by Stanhope pursuant to N.J.S.A. 40:55-1.21 did not provide for such an "improvement," and no suggestion is made that it should be considered a "general condition." Absent such ordinance provision this requirement by the municipality as a condition of final approval is without a legal foundation.
*598 Accordingly, it is held that the judgment of the Law Division be reversed as to municipal requirement that the street pavement be 34' wide and that sidewalks be installed in Section 7, and affirmed, for the reasons stated herein, in respect to the requirement that the stream be enclosed.
Since the estimated cost of such enclosure is approximately 40% of the total estimated cost of the improvements demanded, no costs will be taxed to either party.
Reversed and modified.