23 A.3d 427

PRIME ACCOUNTING DEPARTMENT AS PREDECESSOR IN INTEREST TO BOCCELI, LLC, PLAINTIFF–APPELLANT, v. TOWNSHIP OF CARNEY'S POINT, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 5, 2011—Decided May 9, 2011.

Before Judges PARRILLO, YANNOTTI and ROE.

*Peter L. Davidson* argued the cause for appellant (*Davidson Legal Group, L.L.C.*, attorneys; *Mr. Davidson, Kenneth A. Spassione, Jr.*, and *Steven R. French*, on the briefs).

*Andrea Rhea* argued the cause for respondent (*Puma, Telsey & Rhea, P.A.*, attorneys; *Ms. Rhea*, on the brief).

*Thomas M. Olson* argued the cause for amicus curiae New Jersey State Bar Association (*McKirdy & Riskin, P.A. and*

*Richard H. Steen,* attorneys; *Mr. Steen,* of counsel; *Mr. Olson, Cory K. Kestner, and Richard P. DeAngelis, Jr.,* on the brief).

The opinion of the court was delivered by

PARRILLO, P.J.A.D.

Taxpayer Bocceli, LLC (Bocceli) appeals the May 21, 2010 judgment of the Tax Court dismissing a tax appeal complaint it filed on behalf of Prime Accounting Department for want of subject matter jurisdiction.[1] We affirm.

Some background is in order. Penns Grove Associates (Penns Grove) is the owner of property in Carney's Point (Township), Salem County. In 1978, Penns Grove leased the property to Howard Johnson's Company, which constructed a hotel thereon. At the expiration of that lease, on January 11, 1989, Penns Grove leased the property and improvements to Prime Management Company, Inc. (Prime Management), a New Jersey corporation. At some point thereafter, despite Prime Management being the ground tenant responsible to pay all local property taxes, the Township's tax bill reflected "Prime Accounting Department" (Prime Accounting) as taxpayer for the property.[2] As the name suggests, however, Prime Accounting is the corporate accounting department of Prime Management, located in Fairfield, and not an independent legal entity.

---

[1] Encompassed within the May 3, 2010 order on which the May 21, 2010 judgment was based was the denial of Bocceli's motion to file an amended tax appeal complaint.

[2] The name on the Township's tax bill reflects the tax list created by the Township's tax assessor pursuant to *N.J.S.A.* 54:4-23. The tax list is filed with the County Board of Taxation, *N.J.S.A.* 54:4-35, which then submits a table of aggregates, *N.J.S.A.* 54:4-52, and certifies the list to the Township tax collector, *N.J.S.A.* 54:4-55.

The record does not reveal why Prime Accounting is indicated as the taxpayer in the Township's tax records. During argument, counsel suggested to the Tax Court that Prime Management likely requested that the tax assessor send notices concerning the property to Prime Accounting.

In any event, WIH Hotels, L.L.C., a successor in interest through a series of transactions and merger with Prime Management, in turn entered into a sublease agreement with Bocceli, assigning its leasehold interest to Bocceli as subtenant of the property. Pursuant to the sublease, Bocceli is exclusively in possession of the property and obligated to pay all of the local property taxes. Penns Grove remains the owner of the property.

Although Bocceli acquired its leasehold interest on July 13, 2007, the municipal tax list was never revised to identify Bocceli as the current taxpayer, but rather continued to name Prime Accounting. In fact, the following year, Muhammad Zubair, a managing member of Bocceli, requested an address change when he appeared at the tax collector's office to pay Bocceli's 2008 property taxes on April 25, 2008.[3] The tax collector advised Zubair to produce a deed as proof of Bocceli's ownership interest and then forwarded the completed "request for address change" form to the tax assessor. Despite this advice, Bocceli produced no proof of ownership to either the tax collector or tax assessor, and, therefore, the municipal assessment continued to list Prime Accounting as taxpayer.[4] Consequently, tax bills and notices were sent to Prime Accounting at the same listed address.

On March 24, 2009, Bocceli's counsel filed a complaint in the Tax Court against the Township, challenging the assessment on the property for tax year 2009.[5] The deadline for filing the appeal

---

[3] The tax collector noted on the request for address change the name of Zubair's brother, Dr. Zahid Aslam, also a managing member at Bocceli. According to Aslam's and Zubair's certifications, Zubair hand delivered to the tax collector a check signed by Aslam for payment of the property taxes.

[4] In fact, the Township's 2008 Final/2009 Preliminary Tax Bill still listed Prime Accounting as the owner of the subject property.

[5] The appeal was filed directly with the Tax Court because the assessment on the property exceeded $750,000 as of the time of the filing of the complaint. *See* N.J.S.A. 54:3–21, L. 2007, c. 256, § 1, amended by L. 2009, c. 251, § 1.

was April 1, 2009. *See N.J.S.A.* 54:3–21. The complaint named Prime Accounting as plaintiff and owner, and properly identified the property's correct block, lot, address and municipality. The complaint did not identify Bocceli in any way; in fact, counsel merely stated that he was "[a]ttorney[ ] for plaintiff." The complaint was served upon the Township clerk and assessor, and the administrator of the Salem County Board of Taxation pursuant to *Rule* 8:5–3(a)(7) and *N.J.S.A.* 54:51A–2.

During discovery, the Township requested income and expense information from Prime Accounting pursuant to *N.J.S.A.* 54:4–34 (Chapter 91 motion), serving both Prime Accounting and WIH. Bocceli, therefore, never received the Township's request for financial information. Because the Chapter 91 motion went unanswered, the Township filed a motion to dismiss on August 12, 2009.

At the October 9, 2009 hearing on the dismissal motion, counsel of record for Prime Accounting appeared on behalf of Bocceli, which, as noted, was not a named party to the action, and opposed the application. When it became apparent that Prime Accounting was neither the owner of the property, nor the lessee, nor liable for the payment of local property taxes, the court deferred ruling on the Township's Chapter 91 motion and instead directed the parties to address the issue of standing in supplemental filings. In response, Bocceli filed a motion for leave to amend the complaint pursuant to *Rule* 4:9–1 and *Rule* 8:3–8(a) to name itself as the taxpayer-plaintiff, as well as opposition to the Township's motion to dismiss. In support of its application, Bocceli produced leasehold documents demonstrating that it was the property's actual taxpayer.

Following argument, Judge DeAlmeida issued a written decision, denying the motion for leave to amend the complaint and dismissing the complaint for lack of jurisdiction. The court reasoned:

> Prime Accounting Dept clearly did not satisfy the statutory requirements to establish jurisdiction in this court when it filed its complaint. Prime Accounting Dept, which has no identifiable legal interest in the subject property and was not responsible for the payment of local property taxes for tax year 2009, is neither a

"taxpayer" nor "aggrieved" within the meaning of *N.J.S.A.* 54:3–21.... Because Prime Accounting Dept has no interest in the property nor an obligation to pay local property taxes with respect to the subject property it also does not have standing to challenge the 2009 assessment at issue here. The original complaint, therefore, is a nullity which did not establish jurisdiction in this court.

Thus, the court concluded, "[b]ecause jurisdiction in [the Tax Court] to review the assessment on the subject property for tax year 2009 was never established, the requested amendment to the complaint would be futile and readily subject to dismissal[,]" as out of time. As for Bocceli's attempt to relate its amendment back to the filing date of the original complaint under *Rule* 4:9–3 to establish jurisdiction *within* the time requirements of the statute, the court further concluded:

First, substitution of Bocceli, LLC in place of Prime Accounting Dept as plaintiff is not the equivalent of a routine substitution pursuant to *R.* 4:34–3. Prime Accounting Dept was never the owner or lessee of the subject property and it did not transfer its interest to Bocceli, LLC. There having been no transfer of interest between the current plaintiff and the plaintiff proposed to be added through amendment, such an amendment would not be the equivalent of a routine substitution under *R.* 4:34–3. The proposed amended complaint would add a third party, unrelated to the original parties to the action, as the sole plaintiff.

In addition, relation back under *R.* 4:9–3 would not be appropriate here because there was no error made by plaintiff in identifying itself in the original complaint.... It is not the case that plaintiff's counsel mistakenly named one entity as plaintiff when, in fact, a related entity was the title owner of the property. Instead, Prime Accounting Dept was represented in the complaint as the owner of the subject property, even though it has never been the owner or had any identifiable interest in the subject property. Allowing Bocceli, LLC to be named as plaintiff in place of Prime Accounting Dept would effectuate a complete abrogation of the original complaint by removing the only named plaintiff, who clearly did not have standing to initiate this action, with an unrelated entity who acquired an interest in the subject property almost two years prior to the day on which the complaint was filed. *R.* 4:9–3 was not intended to be stretched that far.

We agree.

▮▮▮▮ The essential question raised in this appeal is what constitutes timely filing under *N.J.S.A.* 54:3–21 so as to confer jurisdiction upon the Tax Court to review assessments on real property. The governing statute provides:

[A] *taxpayer* feeling aggrieved by the assessed valuation of the taxpayer's property ... may *on or before April 1*, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, ... *file a complaint directly with the Tax Court, if the assessed valuation of the property subject to the appeal exceeds $1,000,000.* ... An appeal to the Tax Court

by one party in a case in which the Tax Court has jurisdiction shall establish jurisdiction over the entire matter in the Tax Court.

[*N.J.S.A.* 54:3–21 (emphasis added).] [6]

*Rule* 8:4–1(a)(4) incorporates the requirements of *N.J.S.A.* 54:3–21 for the timely filing of a complaint seeking direct review of a property assessment. The statutory time periods incorporated by this Rule are jurisdictional, requiring "continuing strict and unerring compliance," *McMahon v. City of Newark,* 195 *N.J.* 526, 530, 543, 951 *A.*2d 185 (2008), and rendering the Tax Court without power to relax the time requirements. *Prospect Hill Apartments v. Borough of Flemington,* 172 *N.J.Super.* 245, 247, 1 *N.J.Tax* 224, 227, 411 *A.*2d 737 (Tax 1979). "Strict adherence to statutory time limitations is essential in tax matters [because] of the exigencies of taxation and the administration of local government." *F.M.C. Stores Co. v. Borough of Morris Plains,* 100 *N.J.* 418, 424, 495 *A.*2d 1313 (1985); *see also Macleod v. City of Hoboken,* 330 *N.J.Super.* 502, 505–06, 750 *A.*2d 152 (App.Div.2000). Accordingly, the "[f]ailure to file a timely appeal is a fatal jurisdictional defect." *F.M.C., supra,* 100 *N.J.* at 425, 495 *A.*2d 1313 (citations omitted); *see also Mayfair Holding Corp. v. Twp. Of N. Bergen,* 4 *N.J.Tax* 38, 40 (Tax 1982) ("Compliance with statutory filing requirements is an unqualified jurisdictional imperative, long sanctioned by our courts.").

Clearly, it is the aggrieved taxpayer under *N.J.S.A.* 54:3–21 who is guaranteed "a fair and impartial review and final determination" of property tax assessments. *City of Newark v. Am. Realty & Inv. Co.,* 26 *N.J. Misc.* 238, 240, 58 *A.*2d 856 (Div. Tax App.1948). So too, a tenant responsible for paying property taxes under a lease agreement has "aggrieved taxpayer" standing to bring an appeal pursuant to *N.J.S.A.* 54:3–21. *See, e.g., Aperion Enters., Inc. v. Borough of Fair Lawn,* 25 *N.J.Tax* 70, 77–78 (Tax 2009).[7]

---

[6] *N.J.S.A.* 54:3–21 was amended effective January 16, 2010 to increase the direct appeal threshold to $1 million. *L.* 2009, *c.* 251, § 1.

[7] *Rule* 8:5–3(a)(8) requires "[a] tenant who files a complaint to contest a local property tax assessment … by direct review pursuant to *N.J.S.A.* 54:3–21 [to]

*N.J.S.A.* 54:3–21 establishes the mechanism for such a review. Earlier versions of the statute required that "[t]he petition . . . set forth the cause of complaint, the nature and location of the assessed property and the relief sought." *See L.* 1978, *c.* 102, § 2. The Legislature subsequently deleted these requirements and directed that appeals to the Tax Court "be in accordance with the provisions of the State Uniform Tax Procedure Law, [*N.J.S.A.* 54:48–1 to 53–19]." *N.J.S.A.* 54:3–21. That Law directs "the form, contents, service, and all other matters with respect to the complaint and the practice in the tax court . . . be prescribed by rules of court." *N.J.S.A.* 54:51A–11.

Pursuant to the State Uniform Tax Procedure Law, *Rule* 8:3–5(a) governs the contents of complaints in local property tax cases. The initial requirement of the Rule is that "[t]he first paragraph of every complaint and counterclaim *shall set forth the block, lot and street address of the property.*" *R.* 8:3–5(a)(1) (emphasis added). The Rule then directs that "[t]he complaint . . . include the *name of the owner, the assessment, [and] the type of property,*" among others. *Ibid.* (emphasis added).

Bocceli, the aggrieved taxpayer, failed to meet the statutory mandate of filing a timely complaint challenging the tax assessment in the name of the true party in interest. Although appellant argues that this *in rem* action requires only proper identification of the assessed property for jurisdiction to attach, *cf. City of Newark v. Central & Lafayette Realty Co.,* 150 *N.J.Super.* 18, 21, 374 *A.*2d 504 (App.Div.) (citations omitted) (holding that a tax appeal on real property is a lien on the real estate and not a personal obligation of the landowner), *certif. denied,* 75 *N.J.* 528, 384 *A.*2d 508 (1977), the fact remains that Bocceli itself recognized its defective complaint by moving to amend the pleading to name the correct party.

---

serve a copy of the complaint on the record owner of the property." The record is unclear whether Bocceli provided such notice to the owner of the property, Penns Grove. The Township contends that Bocceli did not.

However, by then the time to file an appeal of Bocceli's 2009 tax assessment had already passed and, thus, for jurisdiction to attach, the amendment would have had to relate back to the original complaint. Yet, as noted, the complaint was never properly before the court, *N.J.S.A.* 54:3–21; *Rule* 8:4–1(a)(4), because the named plaintiff—Prime Accounting—was not only a non-legal entity, but had no relation to the subject property. Thus, the court properly denied appellant's motion to amend.

"Amendments to complaints in the Tax Court are governed by *Rule* 8:3–8(a), which supersedes *Rule* 4:9–1, the rule applicable to amendments to complaints in the Superior Court." *Secaucus v. Hudson Cnty. Bd. of Taxation,* 17 *N.J.Tax* 215, 228 (Tax 1998) (*Secaucus I* ). *Rule* 8:3–8(a) provides:

> A party may, upon notice to all parties and proof of notice, amend pleadings at any time prior to the completion of the pretrial conference or, if there is no pretrial conference, at any time prior to the receipt of notice of the first date fixed for trial. The amendments in the amended pleadings shall be underlined. Unless the court and the proponent of the amendment are notified of objections within 20 days after service, the amendment shall be accepted. If objection is made, the matter may be listed for hearing in the discretion of the court. Amendment of the pleadings may be made thereafter only by motion for good cause shown.

Here, the Township objected to amendment of the complaint, requiring Bocceli to obtain leave of court upon a showing of good cause. *See R.* 4:9–1; *R.* 8:3–8(a).

The grant or denial of a motion for leave to amend a pleading is a matter within the court's discretion. *Kernan v. One Wash. Park Urban Renewal Assocs.,* 154 *N.J.* 437, 457, 713 *A.*2d 411 (1998). Generally, courts liberally grant motions to amend without consideration of the ultimate merits of the amendment. *See Notte v. Merchs. Mut. Ins. Co.,* 185 *N.J.* 490, 500–01, 888 *A.*2d 464 (2006). But where a proposed amended pleading would be dismissed, the courts are free to refuse a party leave to amend the pleading, *Id.* at 501, 888 *A.*2d 464, applying the same standard applicable to a motion to dismiss under *Rule* 4:6–2(e). *Interchange State Bank v. Rinaldi,* 303 *N.J.Super.* 239, 256–57, 696 *A.*2d 744 (App.Div.1997) (citations omitted). In this case, the Tax Court correctly concluded that amending the complaint to name

Bocceli as plaintiff would not preclude dismissal because the original pleading was not properly brought within the time requirements of *N.J.S.A.* 54:3–21 to establish jurisdiction in the Tax Court.

Contrary to appellant's contention, the "relation back" doctrine, *Rule* 4:9–3, does not operate to avoid such a consequence in the present matter. *Rule* 4:9–3 ordinarily applies to new claims germane to the original underlying claim, *Harr v. Allstate Ins. Co.*, 54 *N.J.* 287, 299–300, 255 *A.*2d 208 (1969); *Secaucus I, supra,* 17 *N.J.Tax* at 229; or to new defendants misidentified in the original complaint, *Aruta v. Keller,* 134 *N.J.Super.* 522, 528, 342 *A.*2d 231 (App.Div.1975); or where the amendment is "the functional equivalent of a routine substitution pursuant to *Rule* 4:34–4." *Siligato v. State,* 268 *N.J.Super.* 21, 28, 632 *A.*2d 837 (App. Div.1993).

*Rule* 4:34–4 is one of four circumstances where the court rules allow for substitution of parties: a death of a party, *Rule* 4:34–1; a mental incapacitation of a party, *Rule* 4:34–2; a transfer of interest, *Rule* 4:34–3; or a public officer's death, resignation or separation from office, *Rule* 4:34–4. In *Siligato, supra,* the plaintiff, Siligato, brought an action under 42 *U.S.C.* § 1983 claiming that the State Police illegally obtained a warrant to excavate the concrete foundation of his business in search of human remains. 268 *N.J.Super.* at 24, 632 *A.*2d 837. Upon investigation, the State discovered that Siligato's corporation, Silly Gator, Inc., owned the business—not Siligato. *Id.* at 27, 632 *A.*2d 837. The trial court denied the State's motion to dismiss and permitted amendment of the complaint to add the plaintiff's corporation as an additional plaintiff under *Rule* 4:34–3. *Id.* at 28, 632 *A.*2d 837. We affirmed, reasoning that "[u]nder the circumstances here, the amendment was the functional equivalent of a routine substitution pursuant to *Rule* 4:34–4." *Ibid.*

Here, Bocceli did not seek to add new claims or new defendants closely identified with the original complaint. Further, the naming of Bocceli as plaintiff would not be a mere "routine substitu-

tion." Unlike *Siligato,* the proposed amendment named an entirely new and previously unidentified party as the complainant, completely unrelated to the named plaintiff Prime Accounting. No mutuality or transfer of interest or any other relationship between the two has been identified to obtain the benefit of the relation back rule and thus warrant the relief sought.

Appellant nevertheless argues that equity compels such relief since the pleading correctly identified the subject property and the Township effectively was on notice of the true party in interest, yet did not change the tax list as was its statutory obligation. We disagree.

To be sure, *N.J.S.A.* 54:4–23 requires the tax assessor to "ascertain the names of the owners of all real property situate in his taxing district," which the assessor must then file with the county under *N.J.S.A.* 54:4–35. Under *N.J.S.A.* 54:4–46, the assessor shall prepare a corrected tax list under the direction of the county board, which will then deliver the revised tax list to the municipal tax collector. See *N.J.S.A.* 54:4–55. Here, when informed of the change of address, the Township's tax collector advised Bocceli's agent to produce proof of its interest in the property to effectuate a change in the tax records, yet Bocceli inexplicitly never produced the requested information to the Township. We discern no breach of the Township's statutory duties in this instance.

But even assuming otherwise, the doctrine of estoppel requires a party to show that an adversary engaged in conduct that induced reliance, and that the party acted or changed position to the party's detriment. *Miller v. Miller,* 97 *N.J.* 154, 163, 478 *A.*2d 351 (1984). Moreover, the doctrine "is not lightly invoked against the government, especially in tax matters, where the public interest is so vitally affected." *Mayfair, supra,* 4 *N.J.Tax* at 41 (citations omitted). In fact, estoppel is rarely invoked against a governmental entity and will only be applied in *extreme* circumstances where its application would not "prejudice essential governmental functions." *Middletown Twp. Policemen's Benevo-*

*lent Ass'n Local No. 124 v. Twp. of Middletown,* 162 *N.J.* 361, 367, 744 *A.*2d 649 (2000) (citations and internal quotation marks omitted); *Mayfair, supra,* 4 *N.J.Tax* at 41 (citing *Pennyton Homes, Inc. v. Planning Bd. of Stanhope,* 78 *N.J.Super.* 588, 597, 189 *A.*2d 838 (App.Div.1963), *aff'd,* 41 *N.J.* 578, 197 *A.*2d 870 (1964)).

Here, there is neither extreme circumstances nor detrimental reliance by Bocceli, who most certainly was aware of its own leasehold interest in the subject property. Moreover, separate and apart from any opposition from the Township, the Tax Court, as it did here, may properly raise the issue of jurisdiction *sua sponte,* because:

> The principle is well established that a court cannot hear a case as to which it lacks subject matter jurisdiction even though all parties thereto desire an adjudication on the merits. Such jurisdiction must be granted to the court by the Constitution or by valid legislation, as it cannot be vested by agreement of the parties.
>
> [*Peper v. Princeton Univ. Bd. of Tr.,* 77 *N.J.* 55, 65–66, 389 *A.*2d 465 (1978) (citations and internal quotation marks omitted).]

Appellant's laches argument fails for the same reason. Laches may be "invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." *Knorr v. Smeal,* 178 *N.J.* 169, 180–81, 836 *A.*2d 794 (2003) (citations omitted). However, "[l]aches may only be enforced when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith believing that the right had been abandoned." *Id.* at 181, 836 *A.*2d 794 (citations omitted). In deciding whether to apply laches or estoppel, the court must ultimately determine whether application of either doctrine is equitable. *Town of Secaucus v. City of Jersey City,* 19 *N.J.Tax* 10, 27 (Tax 2000).

Bocceli contends that the Township previously settled tax appeals indicating Prime Accounting Department as taxpayer, and because it did not raise the taxpayer designation issue then, it should be precluded from doing so now. However, in previous appeals, Prime Accounting was at least intrinsically related to

Prime Management, the ground tenant at the time, who held the leasehold interest and was responsible for paying the local property taxes. In this matter, such a vital connection is lacking. Indeed, as noted, there is absolutely no relationship between Bocceli and Prime Accounting, the name listed in the municipal tax list.

Moreover, the equities in this matter do not favor Bocceli. During the nearly two years prior to this dispute, Bocceli was afforded ample opportunity to demonstrate its leasehold interest in the property to the Township, which presumably would have resulted in a correct tax listing. Moreover, rather than identifying Prime Accounting as plaintiff *and* "owner" on the complaint and case information statement, counsel for Bocceli could have, at the very least, selected "other" on the case information statement, and further explained in either pleading Bocceli's interest in the property.

Finally, we do not share the concerns voiced by *amicus curiae* over the impact of the Tax Court's opinion on property owners when filing tax appeals in this State. If anything, the ruling below encourages the accuracy of municipal tax roll listings on which both property owners and their counsel may confidently rely in meeting the Tax Court's statutory filing deadlines.

Affirmed.