58 A.3d 690

PRIME ACCOUNTING DEPARTMENT AS PREDECESSOR IN IN-
TEREST TO BOCCELI, LLC, PLAINTIFF–APPELLANT, v. TOWN-
SHIP OF CARNEY'S POINT, DEFENDANT–RESPONDENT.

Argued September 24, 2012—Decided January 17, 2013.

494

*Peter L. Davidson* argued the cause for appellant (*The Davidson Legal Group,* attorneys; *Mr. Davidson* and *Steven R. French,* on the briefs).

*Andrea Rhea* argued the cause for respondent (*Puma, Telsey & Rhea,* attorneys).

*Susan A. Feeney* argued the cause for amicus curiae New Jersey State Bar Association (*Kevin P. McCann,* President, attorney; *Ms. Feeney* and *Daniel P. Zazzali,* on the brief).

Justice PATTERSON delivered the opinion of the Court.

In this case, the Court considers whether a tax appeal complaint that was timely filed pursuant to *N.J.S.A.* 54:3–21, but named as

the plaintiff an entity that was not an aggrieved taxpayer within the meaning of that statute, should be dismissed for lack of subject matter jurisdiction. The taxpayer in this case, Bocceli, LLC (Bocceli), is the sublessee of a commercial property in the Township of Carney's Point (the Township). For several years prior to the filing of Bocceli's tax appeal, the Township's tax assessment list and notices incorrectly listed Prime Accounting Department (Prime Accounting) as the property owner. Prime Accounting is not a legal entity, but an office that had processed property taxes on behalf of a prior lessee, Prime Management Company, Inc. (Prime Management). Prime Accounting and Prime Management are not affiliated with either the property's current owner or Bocceli, the taxpaying sublessee.

In a complaint filed by its counsel in the Tax Court shortly before the April 1, 2009 deadline for tax appeals, Bocceli designated Prime Accounting, rather than the current owner of the property or Bocceli itself, as the plaintiff. In the early stages of the litigation, the Tax Court learned that Prime Accounting was not a party authorized by *N.J.S.A.* 54:3–21 to file a tax appeal regarding the property at issue, and questioned the named plaintiff's standing. Bocceli sought leave to amend the complaint and name itself as the plaintiff.

The Tax Court denied Bocceli's motion to amend and dismissed the tax appeal. It reasoned that by virtue of the defect in the original complaint, the Tax Court lacked subject matter jurisdiction, and accordingly the proposed amendment would be futile. The Appellate Division affirmed, agreeing with the Tax Court that Bocceli had failed to file a timely complaint in the name of the true party in interest, and that its omission warranted dismissal on jurisdictional grounds.

We reverse the Appellate Division panel's judgment. We agree with the panel and the Tax Court that Bocceli's complaint designated the wrong entity as the plaintiff, and improperly omitted any reference to Bocceli itself. We hold, however, that given the error in the Township's tax assessment list, and pursuant to the

liberal amendment of pleadings standard of *Rule* 8:3–8 and case law construing *Rule* 4:9–1, the Tax Court improperly denied Bocceli's motion to amend the complaint. We further hold that the proposed amendment would relate back to the date of the original complaint, thus preserving the Tax Court's subject matter jurisdiction over Bocceli's tax appeal, and that the amendment would not be futile. We concur with the panel's rejection of Bocceli's equitable estoppel and laches arguments.

## I.

The property that is the subject of this appeal is located at 517 South Pennsville–Auburn Road, and designated as Block 218, Lot 12, in the Township of Carney's Point. The property has been owned by Penns Grove Associates (Penns Grove), a Connecticut corporation, for more than thirty years. In 1978, Penns Grove leased the property to Howard Johnson Company, which constructed a hotel on the site. In 1989, following the expiration of its lease to Howard Johnson Company, Penns Grove leased the property to Prime Management, a New Jersey corporation with offices in Fairfield. Prime Management agreed to "pay and discharge punctually as and when they shall become due and payable, all taxes ... and other governmental impositions and charges of every kind and nature."

Following the Prime Management lease, the Township's tax assessor's office listed Prime Accounting as the property owner in the municipal tax assessment list. Thereafter, the Township sent property tax notices to "Prime Accounting Dept" at Prime Management's Fairfield post office box address. By 2007, because of a series of transactions and the settlement of a lease dispute, Prime Management's former interest in the property transferred to a new lessee, WIH Hotels, Inc. (WIH).

On May 17, 2007, the Township sent a certified letter to Prime Accounting, requesting updated income and expense information for purposes of assessing the value of the property, pursuant to *N.J.S.A.* 54:4–34, an inquiry that is termed a "Chapter 91 re-

quest." *See Davanne Realty v. Edison Twp.*, 201 *N.J.* 280, 280, 990 *A.*2d 639 (2010). The Township's Chapter 91 request eventually reached WIH, which paid property taxes on the property for tax year 2007, and submitted a late response to the request for information. On July 13, 2007, WIH entered into a sublease with Bocceli, a Maryland limited liability company. Bocceli assumed responsibility for property tax payments for tax year 2008. Notwithstanding these changes, the Township tax assessor's office's tax assessment list continued to designate Prime Accounting as the entity responsible for property tax payments. The tax assessor sent tax assessment notices to that entity, which was no longer involved with the property, at Prime Management's Fairfield address.

On April 25, 2008, Mohammed Zubair, a managing member of Bocceli's limited liability company, visited the Township's tax collector's office, a location separate from the tax assessor's office. Zubair paid the first tax payment for which Bocceli was responsible. The parties agree that Zubair requested that the tax assessment list designate "Bocceli, LLC" as the owner and that tax notices be sent to the hotel on the property, but dispute the Township tax assessor clerk's response to that request. Bocceli contends that the clerk assured Zubair that the information would be passed along to the tax assessor, who would make the change. The Township contends, however, that the clerk advised Zubair that he could not effect a change in the tax assessment list without presenting a deed to the tax assessor's office. Bocceli made no further request to correct the Township's records and provided no written communication or deed to the tax assessor's office. Prime Accounting remained on the Township's tax assessment list.

On April 28, 2008, apparently unaware of Zubair's visit to the tax collector's office three days before, the Township tax assessor sent to Prime Accounting the Township's annual Chapter 91 request for updated income and expense information about the property. When that correspondence was returned undelivered, the Township reviewed its records and discovered that WIH had

responded to its Chapter 91 request the previous year. It sent another Chapter 91 request to WIH, but WIH did not forward that request to Bocceli. Accordingly, no one responded to the Township's 2008 Chapter 91 request. The Township continued to list Prime Accounting as the property owner on its tax assessment list notwithstanding the return of its correspondence to Prime Accounting and its awareness of WIH's interest in the property.

Seven months later, on November 25, 2008, the Township's tax collector submitted to its tax assessor's office a "Request for Address Change" form, advising the tax assessor of the address for Bocceli that had been provided by Zubair, but continuing to list Prime Accounting as the property owner. The tax assessor notified Bocceli in early 2009 of the annual tax assessment for the property.

Thus, when this litigation began, the tax assessor was aware of Bocceli's responsibility to pay property taxes, and used Bocceli's mailing address to serve the notice of assessment that prompted the tax appeal. However, the Township's tax assessment list incorrectly designated Prime Accounting as the entity responsible to pay the property taxes.

## II.

Although the complaint that commenced this litigation was filed in the Tax Court by Bocceli's counsel on Bocceli's behalf, Bocceli was not named in its caption or text. Instead, the complaint and its accompanying Case Information Statement designated "Prime Accounting Dept" as the plaintiff, and described that entity as the "owner" of the subject property. Bocceli's counsel were described as "Attorneys for plaintiff," notwithstanding the absence of an attorney-client relationship between the listed law firm and Prime Accounting. The complaint correctly listed the property's block and lot designations and street address in accordance with *Rule* 8:3–5(a)(1). It was served upon Township and Salem County officials pursuant to *Rule* 8:5–3(a)(3), but was not served on the

actual owner of the subject property, as *Rule* 8:5–3(a)(8) mandates when a tenant files a tax appeal.

Responding to the complaint, the Township did not argue that the Tax Court lacked subject matter jurisdiction by virtue of the complaint's designation of Prime Accounting as the plaintiff. Instead, the Township filed a motion to dismiss the complaint, contending that because its Assessor had sent Chapter 91 requests for 2007 and 2008 income and expense information regarding the property to "the owner," and had received no response, the complaint was barred by *N.J.S.A.* 54:4–34.[1]

In its response to that motion, Bocceli revised the caption of its action, designating "Boccel[ ]i LLC Formerly Prime Accounting Dept" as the plaintiff. Bocceli argued that the Township had failed to send its Chapter 91 notices to the appropriate entity, despite being "on constructive notice" that "ownership had changed" on July 7, 2007, and "on actual notice" of Bocceli's status when "the owner," Zahid Aslam, M.D., "went into the tax office and paid the 2nd quarter 2008 tax bill" for the property.[2] In reply, the Township countered that it had no official notice of a change in ownership or of the existence of any entity, other than Prime Accounting, that was entitled to receive Chapter 91 notices. The Township raised, for the first time, potential "issues related to the standing of the parties to file this appeal," and advised the Tax Court that it had been unaware of these issues when it filed its motion to dismiss.

---

[1] *N.J.S.A.* 54:4–34 provides in part that "[n]o appeal shall be heard from the assessor's valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to [a Chapter 91] request for information within 45 days of such request...."

[2] *Bocceli apparently confused two of its principals.* Its brief stated that Aslam had visited the tax assessor's office in April 2008, although Aslam's certification included no such representation. Later submissions to the Tax Court would establish that it was Zubair, not Aslam, who visited the tax assessor's office in April 2008.

At the October 9, 2009 oral argument of the motion to dismiss, the Tax Court judge questioned whether the argument of Bocceli's counsel should be heard, given that the attorney did not represent the named plaintiff and had yet to move to amend the complaint. The judge invited Bocceli's counsel to move to amend the complaint to name Bocceli as a plaintiff, but expressed concern that the April 1, 2009 deadline to file Bocceli's 2008 tax appeal had passed.

Bocceli then filed a motion to amend the complaint to designate "Bocceli LLC Tenant Taxpayer for Penns Grove Associates" in place of "Prime Accounting Dept" as the plaintiff, and to clarify its status as the sublessee of the property. Bocceli contended that it qualified as an aggrieved taxpayer under *N.J.S.A.* 54:3–21, and that, pursuant to *Rule* 4:9–3, the amended complaint should relate back to the original March 24, 2009 filing date. The Township opposed the motion to amend. It argued that because Prime Accounting was neither an owner nor a lessee when the complaint was filed, it lacked standing to bring suit, and that the complaint should be dismissed. The Tax Court agreed, holding that the original complaint was a "nullity which did not establish jurisdiction" because it was filed by a party with neither an interest in the property nor an independent legal existence. It further held that Bocceli's proposed amended complaint would not relate back to satisfy the April 1, 2009 filing deadline. The Tax Court denied the motion to amend and dismissed the complaint for lack of subject matter jurisdiction.

Bocceli appealed. The Appellate Division panel affirmed the Tax Court's denial of the motion to amend. *Prime Accounting Dep't v. Twp. of Carney's Point,* 421 *N.J.Super.* 199, 23 *A.*3d 427 (App.Div.2011). The panel held that Bocceli had not satisfied the mandate of *N.J.S.A.* 54:3–21 to file the complaint in the name of the true party in interest, and that the Tax Court accordingly lacked jurisdiction. *Id.* at 209–10, 23 *A.*3d 427. It further determined that the Tax Court had properly denied Bocceli's motion to amend the complaint, because any amendment to an original

complaint that had failed to confer jurisdiction on the Tax Court would be futile. *Id.* at 206, 23 *A.*3d 427.

We granted certification. *Prime Accounting Dep't v. Twp. of Carney's Point,* 208 *N.J.* 382, 30 *A.*3d 318 (2011).

### III.

Bocceli challenges the Appellate Division's decision as premised upon two legal fictions—the panel's conclusion that the original plaintiff, Prime Accounting, is a nullity without standing to file a complaint and confer jurisdiction upon the Tax Court, and the panel's determination that Prime Accounting had no nexus to the property at the center of this litigation. Bocceli argues that Prime Accounting was an administrative department of a predecessor in the chain of title. It further contends that the Township treated Prime Accounting as a taxpaying entity for years, designating Prime Accounting as the owner on its tax assessment list, serving Chapter 91 requests for information upon Prime Accounting, and resolving prior tax appeals filed as recently as 2007 in Prime Accounting's name.

Invoking *Rule* 8:3–8, *Rule* 4:9–1 and *Rule* 4:9–3, Bocceli further contends that the Appellate Division panel violated the established principle that leave to amend pleadings should be liberally granted. It argues that this principle has particular import in property tax appeals, in which the identification of the property rather than the naming of the owner is the crucial inquiry. Finally, Bocceli asserts that given its long-standing designation of Prime Accounting as the property's taxpaying owner, the Township is barred by the equitable doctrines of estoppel and laches from asserting that "Prime Accounting Dept" is a nullity unqualified to file a complaint in the Tax Court.

The Township counters that Prime Accounting lacked standing to dispute the tax assessment for the property at issue, and that consequently, the Tax Court lacked jurisdiction to consider a tax appeal filed in Prime Accounting's name. It contends that Prime Accounting is not an aggrieved taxpayer within the meaning of

*N.J.S.A.* 54:3–21, and therefore, the original complaint did not confer subject matter jurisdiction upon the Tax Court. The Township argues that the Tax Court properly denied Bocceli's motion to amend because the relation-back doctrine cannot create jurisdiction after the filing date. The Township disputes Bocceli's contention that equitable estoppel and laches principles bar dismissal of the complaint. It argues that Bocceli cannot claim detrimental reliance in light of its awareness that Prime Accounting was not the actual property owner when the tax appeal was filed, and that the Township did not delay in asserting its rights.

Amicus curiae, the New Jersey State Bar Association (NJSBA), argues that property owners and attorneys who litigate tax appeals routinely rely upon municipal tax assessment lists in preparing their pleadings, and that the Appellate Division's decision imposes upon property owners the burden of conducting expensive title searches before filing tax appeals. NJSBA contends that the Appellate Division imposed unnecessary filing requirements that bear no relationship to the issue at the heart of a tax appeal—the value of the property at issue.

## IV.

Municipal tax assessments, and the tax appeals that challenge those assessments, are governed by a detailed statutory scheme, supplemented by court rules. The municipal tax assessor, appointed pursuant to *N.J.S.A.* 40A:9–146, is required to assess real property "to the person owning the same on October 1" of each year. *N.J.S.A.* 54:4–23. As part of that assessment process, the tax assessor must "ascertain the names of the owners of all real property situate in his taxing district[.]" *Ibid.* The assessor prepares a municipal tax assessment list, described by *N.J.S.A.* 54:4–24:

> The assessor shall make a list in tabular form of the names of the owners [of real property], and set down in proper columns opposite each name the description and area of each parcel sufficient to ascertain its location and extent and the taxable value of each parcel as determined by [the assessor].... If the name of the owner of a parcel shall be unknown, it shall be so entered in the list of names, and where

an owner is not known to reside in the taxing district the list shall describe him as nonresident.

[*N.J.S.A.* 54:4–24.]

To update the list, a purchaser of real property may "present his deed or other evidence of title to the assessor," who then records the chain of ownership and certifies the recording on the deed or other instrument. *N.J.S.A.* 54:4–29.[3] In the event that the property owner fails to present the deed to the tax assessor for recording, the county clerk with whom the purchaser files the deed is charged with the task of ascertaining "from the person leaving [the deed] for record ... the post-office addresses of the grantee or grantees[.]" *N.J.S.A.* 54:4–30. The county clerk is then given a week to prepare for the municipal tax assessor an abstract containing "the names of the grantor and grantee and an exact description of the property conveyed," with the grantee's address; upon receipt of this information, the tax assessor must "properly note the facts therein contained." *N.J.S.A.* 54:4–31.

These measures are not the only tools available to tax assessors as they maintain their municipal tax assessment lists. "Chapter 91" requests for information provide another method of collecting current information about owners of real property. Pursuant to *N.J.S.A.* 54:4–34, within forty-five days of being served by certified mail with the tax assessor's written request, the property owner must "render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, and produce his title papers[.]" *N.J.S.A.* 54:4–34. In the absence of a response by the property owner, the assessor must "value [the owner's] property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof," and the owner of income-producing property is barred from challenging the assessment. *Ibid.* The municipal tax assessor is required to

---

[3] While the statute addresses the obligations of property owners after a transfer of ownership, it does not require lessees to notify the municipality of a change in leasehold interest. *N.J.S.A.* 54:4–29.

incorporate the information collected pursuant to this statutory authority in an annual assessment list. *N.J.S.A.* 54:4–35. The list must be completed and filed with the county board of taxation by January 10 of each calendar year. *Ibid.* The statutory scheme thus envisions that by virtue of timely inquiries by tax assessors and information provided by taxpayers, municipalities will be in a position to maintain tax assessment lists that are updated and current.

After the tax assessment list is revised and filed, the next step is the tax assessment. By February 1 of each year, the tax assessor must "notify by mail each taxpayer of the current assessment and preceding year's taxes." *N.J.S.A.* 54:4–38.1. As in this case, a taxpayer who disputes the municipality's valuation of a property assessed at $1,000,000 [4] or more need not commence a tax appeal in the county board of taxation, and may proceed immediately to invoke the jurisdiction of the Tax Court. *N.J.S.A.* 54:3–21.

The Tax Court is a court of limited jurisdiction. *McMahon v. City of Newark,* 195 *N.J.* 526, 546, 951 *A.2d* 185 (2008). In accordance with its constitutional authority to "establish[ ], alter[ ] or abolish[ ] by law" courts of limited jurisdiction, the Legislature created the Tax Court by statute in 1978. *N.J. Const.* art. VI, § 1, ¶ 1; *N.J.S.A.* 2B:13–1; *see also N.J.S.A.* 2A:3A–1, –3, *repealed by L.* 1993, *c.* 74, § 3. Its jurisdiction is constrained by the language of its enabling statutes. *See McMahon, supra,* 195 *N.J.* at 542, 951 *A.2d* 185; *Macleod v. City of Hoboken,* 330 *N.J.Super.* 502, 505–06, 750 *A.2d* 152 (App.Div.2000). The Tax Court has the authority "to review actions or regulations with respect to a tax matter" concerning state agencies and officials, county boards of taxation and county and municipal officials. *N.J.S.A.* 2B:13–2(a). In 1993, its jurisdiction was expanded to include "actions cognizable in the Superior Court which raise issues as to which expertise

---

[4] At the time of the present tax appeal, the minimum assessment required to file directly in the Tax Court was $750,000.

in matters involving taxation is desirable, and which have been transferred to the Tax Court pursuant to the Rules of the Supreme Court." *N.J.S.A.* 2B:13–2(b). The Tax Court also has jurisdiction "over any other matters as may be provided by statute." *N.J.S.A.* 2B:13–2(c). It may exercise "any powers that may be necessary to effectuate its decisions, judgments and orders," *N.J.S.A.* 2B:13–2(d), and "grant legal and equitable relief so that all matters in controversy between the parties may be completely determined," *N.J.S.A.* 2B:13–3(a). The Tax Court's judgments may be directly appealed, as of right, to the Appellate Division. *N.J.S.A.* 2B:13–4.

*N.J.S.A.* 54:3–21 prescribes the procedure for filing tax appeals, stating in relevant part:

> A taxpayer feeling aggrieved by the assessed valuation of the taxpayer's property ... may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, appeal to the county board of taxation by filing with it a petition of appeal; provided, however, that any such taxpayer or taxing district may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, file a complaint directly with the Tax Court, if the assessed valuation of the property subject to the appeal exceeds $1,000,000.
>
> [*N.J.S.A.* 54:3–21.]

Thus, a tax appeal must be filed on behalf of an aggrieved taxpayer within the meaning of *N.J.S.A.* 54:3–21. The sole owner of a property in fee simple who pays the entirety of the property taxes is clearly an aggrieved taxpayer pursuant to the statute. *N.J.S.A.* 54:4–23, 54:3–21. However, the definition of an aggrieved taxpayer has been expanded to include certain parties who do not own the property in question but have an interest in the property, including several categories of tenants. *See, e.g., Slater v. Holmdel Twp.*, 20 *N.J.Tax* 8, 12 (Tax 2002); *Lato v. Rockaway Twp.*, 16 *N.J.Tax* 355, 359–60 (Tax 1997); *Ewing Twp. v. Mercer Paper Tube Corp.*, 8 *N.J.Tax* 84, 88 (Tax 1985). This Court has held that "the right of a tenant to prosecute [a tax] appeal in the name of the landlord may be inferred fairly from the circumstances of the parties in many but not all cases." *Village Super-*

*markets, Inc. v. W. Orange Twp.,* 106 *N.J.* 628, 635, 525 *A.*2d 323 (1987). The Court identified five factors relevant to a determination of a tenant's standing to prosecute a tax appeal:

(1) the provisions of the lease itself, its duration, the burden of the tax surcharge on the tenant, and the possibility that the issue can soon be resolved by renegotiation; (2) the tenant's relationship to the property, whether it is the lead tenant in a shopping center or only one slightly affected by the assessment; (3) whether the tenant will adequately represent the interests of the landlord and other tenants, or whether the tenant has interests adverse to either group; (4) the tenant's ability to mount and prosecute an effective appeal; (5) the landlord's overall relationship with the taxing authority, and whether this is but one of multiple properties as to which the landlord may wish to exercise the right to appeal.

[*Id.* at 634–35, 525 *A.*2d 323.]

Other cases have confirmed the standing of a tenant of free-standing buildings on individual parcels to prosecute tax appeals as the aggrieved taxpayer.[5] As the Tax Court noted in *Aperion Enterprises, Inc. v. Borough of Fair Lawn,* 25 *N.J.Tax* 70, 79 (Tax 2009), *Village Supermarkets* held that "a net-lease tenant, if it has a sufficient stake in the outcome of the appeals and the ability to represent the landlord's interests, may pursue tax appeals[.]" *See also Rainhold Holding Co. v. Freehold Twp.,* 14 *N.J.Tax* 266, 270–71 (Tax 1994); *Slater, supra,* 20 *N.J.Tax* at 12–13. Such a tenant constitutes an aggrieved taxpayer within the meaning of *N.J.S.A.* 54:3–21.

██ The timeliness of a tax appeal is critical. *N.J.S.A.* 54:3–21 imposes a strict deadline of "April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later[.]" *N.J.S.A.* 54:3–21; *see also Rule* 8:4–1(a)(4) (requiring that tax appeal complaints "be filed on or before April 1 of the tax year"). As this Court has noted, "[s]trict adherence to statutory time limitations is essential in tax matters, borne of the exigencies of taxation and the administration of local government." *F.M.C. Stores Co. v. Borough of Morris Plains,* 100 *N.J.* 418, 424, 495 *A.*2d 1313 (1985). That principle

---

[5] *Rule* 8:5–3(a)(8) was amended in 1988, after this Court decided *Village Supermarkets,* to require tenant plaintiffs prosecuting tax appeals to "serve a copy of the complaint on the record owner of the property." *See R.* 8:5–3(a)(8).

has its roots in sound policy; the Legislature " 'has attempted to set out a well organized time-table for the purpose of enabling a municipality to ascertain the amount of taxable ratables within [its] jurisdiction in order that it might adopt a responsible and fairly accurate budget.' " *Id.* at 425, 495 *A.*2d 1313 (quoting *Galloway Twp. v. Petkevis,* 2 *N.J.Tax* 85, 92 (Tax 1980)); *accord Macleod, supra,* 330 *N.J.Super.* at 506, 750 *A.*2d 152. By incorporating a strict deadline in *N.J.S.A.* 54:3–21, the Legislature intended to ensure that municipalities receive timely notice that a particular property's valuation is subject to challenge.

The content of a tax appeal complaint is prescribed in Part VIII of the Rules of Court.[6] *R.* 8:3–5. Pursuant to *Rule* 8:3–5(a)(1), the first paragraph of a tax appeal complaint or counterclaim "shall set forth the block, lot and street address of the property." *R.* 8:3–5(a)(1). The complaint must include the name of the owner, the assessment and the type of property. *Ibid.* It must identify by year any action pending in the Tax Court that concerns the same property, and must indicate whether the taxpayer claims an exemption or farmland qualification. *Ibid.*

Thus, the statutory scheme for tax assessments and the procedural requirements for tax appeals serve common objectives. Municipalities are required to maintain updated tax assessment lists and to provide effective notice to each taxpayer. *N.J.S.A.* 54:4–23, –24, –29, –30, –31, –34, –35, –36, –36.1, –37, –38. The strict deadlines that govern the filing and service of tax court complaints facilitate timely municipal budgeting. *N.J.S.A.* 54:4–34; *R.* 8:4–1(a)(4). The rules prescribing the content of those complaints ensure disclosure of the property whose assessment is in dispute, its owner, and other relevant information. *R.* 8:3–4(a),(b); *R.* 8:3–5(a)(1)–(4).

---

[6] *N.J.S.A.* 54:3–21 provides that tax assessment appeal procedures "shall be in accordance with the provisions of the State Uniform Tax Procedure Law." In turn, the State Uniform Tax Procedure Law directs that "the form, contents, service, and all other matters with respect to the complaint and the practice in tax court shall be as prescribed by rules of court." *N.J.S.A.* 54:51A–11.

## V.

In this setting, we consider the parties' compliance with the Legislature's statutory scheme and the court rules that complement it. The complaint was filed before the April 1 deadline set by *N.J.S.A.* 54:3–21 and *Rule* 8:4–1(a)(4), and was therefore timely. Bocceli clearly constituted an aggrieved taxpayer within the meaning of *N.J.S.A.* 54:3–21, and accordingly, had standing to file the tax appeal. *N.J.S.A.* 54:3–21; *Village Supermarkets, supra,* 106 *N.J.* at 632–33, 635, 525 *A.2d* 323; *Aperion Enters., supra,* 25 *N.J.Tax* at 79; *Slater, supra,* 20 *N.J.Tax* at 12–13. However, following what Bocceli and the NJSBA characterize as the prevailing practice in tax appeal litigation, Bocceli simply copied the name that mistakenly appeared on the municipal tax assessment list, and designated Prime Accounting as the plaintiff.

That error could have been prevented had the parties investigated the current status of the property before the litigation began. By virtue of its attempts to communicate with Prime Accounting and the records of WIH and Bocceli's tax payments, the Township was on notice that Prime Accounting was no longer the responsible taxpayer, and that WIH and Bocceli had assumed that role. It did not correct its tax assessment list or supplement its records in light of this information.

In turn, Bocceli was in a position to resolve the uncertainty about the property's status and to file an accurate complaint. Given that its lease transaction was with WIH and that it had no contact with Prime Accounting, Bocceli was on notice that the Township's records required revision. Although Bocceli's representative visited the tax collector's office, Bocceli made no written request for a correction of the tax assessor's records. It evidently undertook little, if any, investigation before filing its tax appeal. Instead, Bocceli submitted a complaint that perpetuated the confusion. It named Prime Accounting as the plaintiff, and misidentified Bocceli's attorney as Prime Accounting's counsel. Moreover, Bocceli did not identify itself on either the complaint or the case information statement, which includes a space for designation of a

tenant who prosecutes a tax appeal. *See* Pressler & Verniero, *Current N.J. Court Rules*, Appendix XXVIII–A, *R.* 8:3-2 (2012).

The issue before the Court is the effect of that error, which the Appellate Division deemed fatal to the subject-matter jurisdiction of the Tax Court. We hold that the defect in the complaint can be corrected by amendment, and that Bocceli should be given leave to file an amended complaint, which will relate back to the March 24, 2009 filing of the original complaint.

In Tax Court, amendments to complaints are "governed by [*Rule* ] 8:3–8(a) which supersedes [*Rule* ] 4:9–1, the rule applicable to amendments to complaints in the Superior Court." *Town of Secaucus v. Hudson Cnty. Bd. of Taxation,* 17 *N.J.Tax* 215, 228 (Tax 1998). *Rule* 8:3–8(a) provides:

A party may, upon notice to all parties and proof of notice, amend pleadings at any time prior to the completion of the pretrial conference or, if there is no pretrial conference, at any time prior to the receipt of notice of the first date fixed for trial. The amendments in the amended pleadings shall be underlined. Unless the court and the proponent of the amendment are notified of objections within 20 days after service, the amendment shall be accepted. If objection is made, the matter may be listed for hearing in the discretion of the court. Amendment of the pleadings may be made thereafter only by motion for good cause shown. Amendments to conform to the evidence may be permitted in accordance with Rule 4:9–2.

[*Rule* 8:3–8(a).]

 Like an early motion to amend pleadings in the Superior Court, a motion to amend that is filed in the initial stages of a Tax Court proceeding is governed by a liberal standard. *See Secaucus, supra,* 17 *N.J.Tax* at 228 ("Recent decisions interpreting *R.* 4:9–1 liberally permit amendments to pleadings. This approach should be employed when interpreting *R.* 8:3–8(a)." (citations omitted)). When the opposing party objects to an amendment and a finding of good cause is accordingly required under *Rule* 8:3–8(a), determination of the motion to amend is within the discretion of the trial court. *See* Pressler & Verniero, *supra,* comment 8.1 on *R.* 8:3–8; *Secaucus, supra,* 17 *N.J.Tax* at 228. As in Superior Court, the Tax Court considers motions to amend in light of the "admonition[ ] that the sole purpose of the courts is to render justice between the parties." *Schumar v. Borough of Bernards-*

*ville,* 347 *N.J.Super.* 325, 332, 790 *A.*2d 171 (App.Div.2001) (citing *Allegro v. Afton Vill. Corp.,* 9 *N.J.* 156, 161, 87 *A.*2d 430 (1952)). Indeed, this Court has construed *Rule* 4:9–1 to "require[ ] that motions for leave to amend be granted liberally," even if the ultimate merits of the amendment are uncertain. *Kernan v. One Washington Park Urban Renewal Assoc.,* 154 *N.J.* 437, 456, 713 *A.*2d 411 (1998) (quoting *G & W, Inc. v. Borough of E. Rutherford,* 280 *N.J.Super.* 507, 516, 656 *A.*2d 11 (App.Div.1995)).

One exception to that rule arises when the amendment would be "futile," because "the amended claim will nonetheless fail and, hence, allowing the amendment would be a useless endeavor." *Notte v. Merchants Mut. Ins. Co.,* 185 *N.J.* 490, 501, 888 *A.*2d 464 (2006). " '[C]ourts are free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law. . . . [T]here is no point to permitting the filing of an amended pleading when a subsequent motion to dismiss must be granted.' " *Ibid.* (quoting *Interchange State Bank v. Rinaldi,* 303 *N.J.Super.* 239, 256–57, 696 *A.*2d 744 (App.Div.1997)).

In this case, the Appellate Division held that the proposed amendment would be futile because the substitution of Bocceli for Prime Accounting would not "relate back" to the original complaint. *Prime Accounting, supra,* 421 *N.J.Super.* at 206, 23 *A.*3d 427. *Rule* 4:9–3 governs the application of the relation-back doctrine in Tax Court matters,[7] as it does in Superior Court. *See,*

---

[7] The Part IV Rules, which include *Rule* 4:9–3, "have been incorporated by reference where appropriate, and the implicated rules of general application were also amended to include and provide for the Tax Court." Pressler & Verniero, *supra,* comment 1 on *R.* 8:1. Although *Rule* 4:9–3 has not been specifically incorporated by reference in the Tax Court rules, it has been applied in Tax Court cases. *See Inwood Owners, Inc. v. Twp. of Little Falls,* 216 *N.J.Super.* 485, 496, 524 *A.*2d 441 (1987); *Univ. Cottage Club of Princeton v. Princeton Borough,* 26 *N.J.Tax* 185, 189 (Tax 2011). The relation-back doctrine complements the Tax Court amendment practice under *Rule* 8:3–8(a), and its application in Tax Court matters is appropriate notwithstanding the absence of specific language in Part VIII incorporating it into the Tax Court rules. *See*

*e.g., Inwood, supra,* 216 *N.J.Super.* at 496, 524 *A.*2d 441; *Cottage Club, supra,* 26 *N.J.Tax* at 189; *Secaucus, supra,* 17 *N.J.Tax* at 229. *Rule* 4:9–3 provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading[.]" *R.* 4:9–3. It empowers the court to "upon terms, permit the statement of a new or different claim or defense in the pleading." *Ibid. Rule* 4:9–3 recognizes the importance of providing notice and avoiding prejudice to the opposing party:

> An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by amendment.
>
> [*R.* 4:9–3.]

Under the Rule, "[w]here the amendment constitutes the same matter more fully or differently laid, or the gist of the action or the basic subject of the controversy remains the same, it should be readily allowed and the doctrine of relation back applied." *Harr v. Allstate Ins. Co.,* 54 *N.J.* 287, 299, 255 *A.*2d 208 (1969); *see also Siligato v. State,* 268 *N.J.Super.* 21, 29, 632 *A.*2d 837 (App.Div. 1993) (allowing amendment re-identifying plaintiff); *Bussell v. DeWalt Prod. Corp.,* 259 *N.J.Super.* 499, 510, 614 *A.*2d 622 (App. Div.1992) (affirming the amendment of a judgment in plaintiff's favor to name as a party defendant's successor in interest who was not previously named), *certif. denied,* 133 *N.J.* 431, 627 *A.*2d 1137 (1993).

---

Union City Assoc. v. City of Union City, *247* N.J.Super. *249, 252, 588* A.*2d 1279 (App.Div.1991) (applying entire controversy doctrine of* Rule *4:27 and* Rule *4:30A to the Tax Court, notwithstanding the absence of cross-references to those* Rules *in Tax Court rules or commentary).*

*Rule* 4:9–3's language, and the majority of cases applying it, address the typical setting in which a defendant has been misidentified in a prior pleading. *See, e.g., Avdel Corp. v. Mecure*, 58 *N.J.* 264, 273–74, 277 *A.*2d 207 (1971); *Carrino v. Novotny*, 78 *N.J.* 355, 367, 396 *A.*2d 561 (1979). The *Rule* "has also been applied to an amendment re-identifying the party making the claim provided all of the conditions of the rule are satisfied." Pressler & Verniero, *supra,* comment 4 on *R.* 4:9–3. In *Siligato, supra,* 268 *N.J.Super.* at 28–29, 632 *A.*2d 837, the Appellate Division considered an error in the designation of the plaintiff. Samuel Siligato was the principal of a corporation, Silly Gator, Inc., that operated a bar on its property. *Siligato, supra,* 268 *N.J.Super.* at 25, 632 *A.*2d 837. Claiming that the State Police had premised a search of the property upon an invalid warrant, Siligato brought an action pursuant to 42 *U.S.C.A.* 1983, naming himself in his individual capacity as the plaintiff. *Id.* at 24, 28, 632 *A.*2d 837. The State learned that the owner of the bar was not Siligato in his individual capacity, but his corporation, and moved to dismiss the complaint for lack of standing. *Id.* at 28, 632 *A.*2d 837. Considering the lack of prejudice to the defendant, the Appellate Division panel affirmed the trial court's denial of the motion to dismiss. It construed *Rule* 4:9–3 to permit the amended complaint, with the plaintiff's name corrected, to relate back to the original filing. *Id.* at 28–29, 632 *A.*2d 837.[8]

Our decision is consistent with the approach of several federal courts, whose subject matter jurisdiction is limited by *U.S.*

---

[8] In this case, the Appellate Division, agreeing with the Tax Court, distinguished *Siligato*, construing that case to stand for the proposition that an error in a complaint can only be cured under *Rule* 4:9–3 if the amendment was "the functional equivalent of a routine substitution" under *Rule* 4:34–3 (transfer of interest). *Prime Accounting, supra,* 421 *N.J.Super.* at 210, 23 *A.*3d 427 (quoting *Siligato, supra,* 268 *N.J.Super.* at 28, 632 *A.*2d 837). We do not read *Siligato* so narrowly. In *Siligato*, the Appellate Division considered the proposed amendment under review to be tantamount to a *Rule* 4:34–3 substitution. However, the panel separately found the amendment before it to be warranted by *Rule* 4:9–3, and that is the holding that is relevant here. *Ibid.*

*Const.* art. II, § 2, and whose relation-back rule, *Fed.R.Civ.P.* 15(c), is analogous to *Rule* 4:9–3. In *Flores v. Cameron County,* 92 *F.*3d 258, 272–73 (5th Cir.1996), the United States Court of Appeals for the Fifth Circuit applied *Federal Rule of Civil Procedure* 15(c) to permit the amendment of a wrongful death complaint that named as the plaintiff the decedent's mother before she was appointed as administratrix of her son's estate. The court held that the plaintiff's amended complaint, filed after her appointment as administratrix, would relate back to the original filing date. *Id.* at 273. Other federal cases address the more common setting of an error in the naming of a defendant, holding that an amended complaint relates back for jurisdictional purposes. *See E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.,* 241 *F.*3d 154, 163 (2d Cir.2001) (noting that "where a change in parties, necessary to the existence of jurisdiction, is appropriate and is made (even on or after appeal), appellate courts have acted as if the trial court had jurisdiction from the beginning of the litigation"); *Berkshire Fashions, Inc. v. The M.V. Hakusan II,* 954 *F.*2d 874, 886–87 (3d Cir.1992) (allowing omission of a non-diverse defendant and allowing relation back to original filing); *see also Black v. Sec'y of Health and Human Servs.,* 93 *F.*3d 781, 790 (Fed.Cir.1996) (permitting relation back of statutory claim which initially lacked sufficient allegation of unreimbursed expenses). These cases underscore the principle that in appropriate circumstances, with no showing of prejudice to the defendant, a court of limited jurisdiction may permit a corrected complaint to relate back to the original filing date, and that the error in the original complaint does not destroy subject-matter jurisdiction.[9]

The principles articulated by the Appellate Division in *Siligato,* and by these federal courts, warrant a similar result here. Fol-

---

[9] *Flores, E.R. Squibb* and *Berkshire Fashions* rely upon *Federal Rule of Civil Procedure* 15(c), not 28 *U.S.C.A.* 1653, which provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." *See Newman–Green v. Alfonzo–Larrain,* 490 *U.S.* 826, 830–32, 109 *S.Ct.* 2218, 2221–22, 104 *L.Ed.*2d 893, 900–02 (1989). 28 *U.S.C.A.* 1653 has no counterpart in New Jersey law.

lowing what Bocceli and NJSBA contend is established practice in tax appeals, Bocceli did not identify itself in the complaint, but named Prime Accounting, the recipient of the tax assessment, as the plaintiff. That misdesignation constituted a significant error. Yet that error did not deprive the Tax Court of subject-matter jurisdiction over the tax appeal. The complaint was timely filed, in advance of the April 1, 2009 statutory deadline. *N.J.S.A.* 54:3–21. It clearly identified Bocceli's action as a tax appeal, accurately described the property at issue, and put the Township and the public on notice that the 2008 tax assessment for that property was disputed by the taxpayer. Nothing in the record suggests that Bocceli misdesignated the plaintiff in its action in order to conceal its interest in the property or its stake in the tax appeal. Indeed, before the tax appeal was filed, Bocceli contacted the Township to identify itself as the taxpayer for this property.

Moreover, Bocceli's error did not in any respect prejudice the defendant municipality. Although Bocceli did not present written evidence that it had replaced Prime Management as the lessee, its payment of property taxes just months before apprised the Township of its interest in the property. Thus, the Township cannot claim that it was unaware of Bocceli's status as the aggrieved taxpayer prior to the motion to amend. Indeed, the Township's arguments before the Tax Court confirm that it understood Bocceli's role, despite the inaccuracy in its tax assessment list. Given these factors, the dismissal of Bocceli's tax appeal on jurisdictional grounds would create a disincentive for tax assessors to maintain accurate tax assessment lists, as *N.J.S.A.* 54:3–26 mandates.

Accordingly, we hold that the principles of *Rule* 4:9–3 warrant the application of the relation-back doctrine, and accordingly Bocceli's proposed amendment of its complaint would not have been futile. We reverse the portion of the Appellate Division's decision that affirmed the Tax Court's denial of Bocceli's motion to amend and its dismissal of Bocceli's tax appeal.

We concur with the Appellate Division panel's rejection of Bocceli's equitable estoppel and laches arguments for the reasons

set forth in the panel's opinion. *Prime Accounting, supra,* 421 *N.J.Super.* at 211–213, 23 *A.*3d 427.

## VI.

Bocceli and NJSBA represent it is the historic practice in tax appeal proceedings for taxpayers' counsel to designate, as plaintiff, the entity that appears on the tax assessment list, without regard to the accuracy of the list or the current status of that entity. They further note that that Tax Court will reject a complaint unless the person or entity designated on the municipal tax assessment list is named as the plaintiff, whether or not that list has been updated to reflect changes in the status of the property.

We suggest that the Tax Court and tax appeal bar modify that practice. *Rule* 8:3–5 requires that the property owner be identified in a tax appeal complaint. However, attorneys who file tax appeal complaints should not indicate that they represent a party who is not their client. Counsel for lessees, sublessees and other taxpayers who are not the record owners of property subject to a tax appeal should undertake a reasonable investigation to determine the identity of the current property owner before filing a tax appeal.[10] In addition to the person or entity listed on the municipality's tax assessment list, the person or entity qualifying as an aggrieved taxpayer under *N.J.S.A.* 54:3–21, and the current property owner, if known to the taxpayer following a reasonable investigation, should be identified in a tax appeal complaint and in the case information statement. In accordance with their statutory obligations under *N.J.S.A.* 54:4–23, –24, –29, –30, –31, –35, –36, –36.1, –37 and –38, municipalities should correct their tax assessment lists. These statutes do not impose upon municipalities the obligation to change the tax assessment list when a

---

[10] Every lawyer signing a pleading certifies "that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the factual allegations in that complaint have evidentiary support, or are likely to have evidentiary support or will be subject to withdrawal or correction. *R.* 1:4–8(a).

property retains the same owner, but a new lessee assumes the responsibility to pay property taxes. However, errors in the identification of parties, such as the one that occurred here, will be minimized if municipalities make diligent efforts to update their records to identify current taxpayers. In short, we urge taxpayers, municipalities and their counsel to take affirmative steps to minimize confusion over the identity of property owners or other aggrieved taxpayers filing tax appeals pursuant to *N.J.S.A.* 54:3–21, and thereby conserve the resources of taxpayers, municipalities and the Tax Court.

We invite the Supreme Court Committee on Civil Practice to consider whether *Rule* 4:9–3 should be revised to provide that an amendment correcting an error in the designation of a party asserting a claim may relate back to the filing of the original complaint. We further invite the Supreme Court Committee on the Tax Court to consider whether a specific rule applying the relation-back doctrine in the setting of tax appeals would address considerations unique to this specialized litigation.

## VII.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Tax Court for further proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice RABNER, and Justices LaVECCHIA, ALBIN, HOENS and PATTERSON—5.