**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0967-23

ARTHUR PHILLIPS,

     Plaintiff-Appellant,

v.

PUGLIA EXCAVATING, LLC,
BRIAN PUGLIA, KRISTINA
PUGLIA, and ESTATE OF
ARTHUR PUGLIA,

     Defendants-Respondents,

and

J. LLEWELLYN MATTHEWS
and ESTATE OF ANGELINA
PUGLIA,

     Defendants.

_____

Argued November 21, 2024 – Decided January 13, 2025

Before Judges Gilson and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1006-22.

Thomas P. Kelly, III argued the cause for appellant (Kelly Law Offices, LLC, attorneys; Thomas P. Kelly, on the brief).

Agnieszka Antonian argued the cause for respondents Puglia Excavating, LLC, Brian Puglia and Kristina Puglia (Connell Foley LLP, attorneys; Timothy E. Corriston, of counsel; Agnieszka Antonian and Anthony J. LoPresti, on the brief).

Philip L. Guarino argued the cause for respondent Estate of Arthur Puglia (Guarino & Co. Law Firm, LLC, attorneys; Philip L. Guarino, on the brief).

PER CURIAM

This appeal arises from a dispute over the sale of a sixty-seven-acre farm in Burlington County owned by the Estate of Angelina Puglia (decedent). The property has been the subject of extensive litigation over many years involving decedent's family members. In the present case, plaintiff Arthur Phillips, decedent's son-in-law, contends that the substantive environmental damage claims, including Spill Act claims, were never previously litigated and resolved, and were improperly dismissed by the court.

Plaintiff appeals from an October 16, 2023 order granting defendants' Puglia Excavating, LLC, Brian Puglia and Kristina Puglia (the Puglias) motion to dismiss the complaint and denying his motion to amend his complaint. After thoroughly reviewing the record and applying the governing legal principles, we

2

affirm essentially for the reasons set forth in the comprehensive and cogent written opinion of Judge James Ferrelli.

## I.

Decedent had three children: Arthur Puglia, Rosemaria Phillips (married to Arthur Phillips) and William Puglia. Decedent owned a sixty-seven-acre farm (the Property) located at 1037 Oxmead Road, Springfield and Eastampton Townships. After removing decedent's sons, Arthur and William, as co-executors, the court appointed J. Llewelyn Mathews, Esq. as Administrator of decedent's estate. Mathews' primary responsibility was to sell the Property.

Following a private bidding process, decedent's daughter, Rosemaria Phillips, and her husband, Arthur, (the Phillipses), were the highest bidders and entered a contract on January 13, 2015 (January 2015 Contract), to purchase the Property. The January 2015 Contract included the following relevant language:

> The Buyer acknowledges that the Property is being sold in an "AS IS" condition and that this Agreement is entered into based upon the knowledge of the Buyer as to the value of the land and whatever buildings are upon the Property, and not on any representation made by the seller as to the character or quality. Therefore the Buyer, at the Buyer's sole cost and expense is granted the right to have the dwelling and all other aspects of the Property, inspected and evaluated by "qualified inspectors" (as the term is defined in paragraph (f) below) for the purpose of determining the existence of any physical defects or environmental conditions such

3

as outlined above. If Buyer chooses to make the inspections referred to in this paragraph, such inspections must be completed, and written reports must be furnished to the [s]eller listed in [s]ection I and [b]roker(s) listed in [s]ection 26 of this Agreement within 60 calendar days after Court approval – see addendum. If Buyer shall fail to furnish such written reports to the Seller and Broker(s) within the time period specified in this paragraph, this contingency clause shall be deemed waived by buyer, and the Property shall be deemed acceptable by Buyer. The time period for furnishing the inspection reports is referred to as the "Inspection Time Period[.]"

. . .

If any physical defects or environmental conditions are reported by the inspectors to the Seller within the Inspection Time Period, the Seller shall then have seven (7) calendar days after the receipt of such reports to notify the Buyer in writing that the seller shall correct or cure any of the defects set forth in such reports. If Seller shall fail to notify Buyer of Seller's agreement to so cure and correct, such failure to so notify shall be deemed to be a refusal by Seller to cure or correct such defects.  If Seller shall fail to agree to cure or correct such defects within said seven (7) day period, or if any part of the dwelling is found to be located within a flood hazard area, or if the environmental condition at the Property is incurable and is of such significance as to unreasonably endanger the health of the Buyer, the Buyer shall then have the right to void this Contract by notifying the [s]eller in writing within seven (7) calendar days thereafter. If Buyer shall fail to void this Contract within the seven (7) day period, the Buyer shall have waived his right to cancel this Contract and this Contract shall remain in full force, and Seller shall be under no obligation to correct or cure any of the defects

4

set forth in the inspections. If Seller shall agree to correct or cure such defects, all such repair work shall be completed by Seller prior to the closing of title.

The January 2015 Contract was approved by the court via a consent order on January 26, 2015, authorizing Mathews to sell the Property to the Phillipses.

At the time of the sale of the Property, Brian Puglia, (decedent's grandson and son of Arthur Puglia), resided with his wife, Kristina Puglia, and operating their business, Puglia Excavating, LLC, on the Property. Following inspections and by agreement of the parties, certain scrap, milling material, tanks, and drums associated with the Puglias' business and farming activities conducted on the Property were removed. Also, by agreement, the Estate paid for the removal of millings on the Property. The Phillipses' attorney scheduled a closing date for June 19, 2015.

A.  2015 Eviction Proceeding in Special Civil Part.

At the Phillipses' request, Mathews filed for the Puglias' eviction from the Property. The Puglias filed for a stay of the eviction. At a hearing before Judge Janet Z. Smith on August 28, 2015, the attorney for the Phillipses opposed the stay of eviction and represented to the court that the "buyers have been anxious to close." However, because the Property is a farm, "the inspection process was somewhat more intensive . . . ." Counsel further represented that

5

[i]t was discovered during the inspection process, that the existing tenant had done some things to the property that needed to be remediated. For example, he put a parking lot on part of it with what I'll refer to as asphalt millings. I'm not a construction guy, but that had to be removed. And that's been done.

Judge Smith stayed the Puglias' eviction until September 30, 2015. On September 23, 2015, the Puglias' moved off the property. Mathews and the Phillipses agreed to a closing date of October 14, 2015.

Shortly before the October 14, 2015 closing date, the Phillipses' counsel notified Mathews of the need to postpone the closing "until the resolution of an environmental issue that has arisen." According to counsel, during a recent soil inspection performed by the United States Department of Agriculture on August 11, 2015, the inspector found, "[t]he soils observed in this area were not naturally occurring and showed evidence of disturbance." Additionally, in Soil Boring 2, "there was observed a layer of fill that appeared to be refuse or garbage that extended from the ground surface . . ." and "a strong petrochemical smell emanating from the bore hole" was detected. The Phillipses intended to request a Phase II inspection before closing on the Property.

Mathews, however, refused to have any additional inspections conducted and demanded the Phillipses agree to a "time of the essence" closing date, to which the Phillipses refused. In an October 20, 2015 letter, Mathews notified

6

the Phillipses of termination of the January 2015 Contract. Based upon the termination of the January 2015 Contract, Mathews entered a new contract of sale of the Property with Arthur Puglia.

B. April 2016 Chancery Division Orders to Show Cause.

Thereafter, Mathews filed a verified complaint and order to show cause in the Chancery Division seeking, in relevant part, approval to terminate the January 2015 Contract, vacate the consent order and approve the sale of the Property to the new buyer, Arthur Puglia. The Phillipses also filed a verified complaint and order to show cause requesting specific performance of the January 2015 Contract between the Estate and the Phillipses for the sale of the Property and voiding the contract between the Estate and Arthur Puglia.

On April 8, 2016, Judge Paula Dow of the Chancery Division granted in part the Phillipses' request for an order to show cause directing specific performance of the January 2015 Contract for the sale of the Property. Judge Dow found, by the unambiguous terms of the contract, Mathews was under no obligation to perform any corrective measures because the Property was sold to the Phillipses "as is." Judge Dow stated that "[g]iven Mathew's timely unequivocal refusal to perform the requested inspections and remediation, [under the clear terms of the contract], the Phillipses had seven days to void the

January 2015 Contract, which they did not do." Thus, she concluded, the contract remained enforceable. Judge Dow denied the Phillipses' request for an order directing Mathews to arrange for the recommended environmental inspections of the Property, remediating any pollution, and recovering fees for any necessary remediation.

Judge Dow ordered the Phillipses to comply with the terms of the January 2015 Contract within thirty days of the date of the order. If they failed to comply, the Judge held that they would be in breach of the contract, and Mathews would be free to convey the Property to Arthur Puglia.

Because the main dispute in the case was between Mathews and the Phillipses, Judge Dow dismissed the Phillipses' complaint against the Puglias. However, in an April 13, 2016 order, Judge Dow transferred the remaining counterclaims filed by the Puglias to the Law Division because the primary relief sought was legal in nature rather than equitable.

On May 3, 2016, the Phillipses purchased the property.

C. May 2017 Law Division Ruling.

After the remaining claims were transferred to the Law Division, which included the Puglias' claim for wrongful eviction, the parties engaged in motion practice. On May 16, 2017, based upon the Phillipses' attorney's representation

A-0967-23

that the cross claims against both the Estate and Mathews were withdrawn, Judge Susan Claypoole dismissed those claims against the parties with prejudice. As to the Puglias, Judge Claypoole dismissed their wrongful eviction claims against the Phillipses with prejudice and denied their motion to dismiss the Phillipses' counterclaims against them.

D. June 2018 Law Division Ruling.

The Phillipses subsequently filed a motion to amend their counterclaim, crossclaims and third-party claims to assert claims of statutory liability, which the Puglias opposed on the basis that the amended pleadings sought only to reassert claims against the Puglias which were previously dismissed with prejudice. On June 22, 2018, Judge Claypoole granted the Puglias' cross motion to dismiss with regard to their liability and denied the Phillipses' cross motion to amend their complaint.

Judge Claypoole held that "four out of the five claims proposed by [the Phillipses] in their amended [c]ross-claims against [the] Estate have been dismissed with prejudice by this [c]ourt's May 16, 2017 [o]rder." Judge Claypoole further explained that "[t]he fifth claim proposed by [d]efendants against the Estate and claims [d]efendants have proposed against [p]laintiffs are related to the Spill Act." The judge concluded that defendants have not

"presented any new information with regard to these claims . . . ." Judge Claypoole was satisfied that "[d]efendants knew of these claims" and did not present them because "there were no further environmental issues." Thus, Judge Claypoole concluded that the Spill Act claim previously asserted in the Phillipses' verified complaint filed in the Chancery Division proceeding was barred by the doctrine of collateral estoppel.

E. September 2018 Law Division Ruling.

The Phillipses filed a motion for reconsideration of the June 22, 2018 order. The Phillipses argued that the court's June 22, 2018 order denying them leave to file an amended complaint in order to add claims under the New Jersey Spill Act was decided "upon a palpably incorrect basis." Judge Claypoole denied reconsideration, reiterating that the Phillipses have not presented any new information with regards to the Spill Act claims, and moreover, they previously represented before Judge Smith that there were no further environmental issues. Now, as Judge Claypoole pointed out, the Phillipses were "tak[ing] a different stance." As a result, the Judge determined that the Spill Act claims against plaintiffs were barred by judicial estoppel.

A-0967-23

F. May 2022 Settlement Agreement.

On May 12, 2022, the parties entered into a settlement agreement in the Law Division case. The consent order referenced the verified complaint filed on June 22, 2020 on behalf of Rosemaria Phillips, and dismissed all claims asserted within the complaint with prejudice, binding the dismissal "on the named parties, their spouses, heirs, successors and assigns . . . ."

Second, the consent order approved the "Administrator's Final Informal Account and Plan to [c]lose the Estate of Angelina Puglia . . ." and third, the consent order discharged the Administrator "from all duties and obligations of his office . . . ." Fourth, the consent order discharged RLI Insurance Company from "every liability by reason of having become the Administrator's surety . . . ." Importantly, the consent order specified that "no appeal [could] be taken from this [c]onsent [j]udgment . . . ."

G. 2023 Law Division Case.

Plaintiff Arthur Phillips filed another complaint, asserting claims against the Administrator, Puglia Excavating, LLC, Brian and Kristina Puglia, and the Estate of Arthur Puglia.[1] Defendants moved to dismiss the complaint for failure

---

[1] Arthur Puglia died sometime after the 2018 Law Division orders.

to state a claim pursuant to <u>Rule</u> 4:6-2(e).  Plaintiff filed a cross motion seeking to file a first amended complaint.

After detailing the litigation involving these parties spanning nearly ten years, Judge Ferrelli concluded that the claims against Mathews were barred.[2] Regarding the claims against the Puglias, Judge Ferrelli held that both the 2016 Chancery Division order and the 2017 and 2018 Law Division orders addressed the substantive merits of plaintiff's environmental claims against the Puglias, and that the environmental claims against the Puglias are barred by the doctrines of judicial estoppel, res judicata, and collateral estoppel.

Judge Ferrelli concluded that the claims against the Estate of Arthur Puglia were also barred by the entire controversy doctrine.  The judge stated, "[t]he Phillipses could have asserted the claims that are now being asserted against the Estate of Arthur Puglia in prior proceedings, but they chose not to do so, resulting in their preclusion."  Judge Ferrelli found that the claims were known to the Phillipses, but they refused or failed to act on these claims, which resulted in these claims now being barred.

---

[2]  Appellant is not seeking reversal of the portion of the October 16, 2023 order that dismissed the claims against the Administrator. Therefore, we need not address that issue.

12

The judge denied plaintiff's motion to amend the complaint to substitute RAP Farm Enterprises, LLC (RAP), for Arthur Phillips. As the judge noted, the new party, RAP — which stands for "Rosemaria and Arthur Phillips" — has the Phillipses as its principals. The settlement agreement covers "spouses, heirs, successors and assigns," and the judge found that RAP qualifies as an "assign." Moreover, Judge Ferrelli concluded that privity existed between the Phillipses and RAP, and the claims plaintiff sought to assert in the amended complaint were not sustainable as a matter of law. This appeal followed.

II.

When a court grants a motion to dismiss for failure to state a claim pursuant to Rule 4:6-2(e), an appellate court reviews the dismissal de novo. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). "A reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107).

Having conducted a de novo review of plaintiff's assertions that the trial court erred in dismissing his complaint and denying his request to amend the complaint, we reject these contentions and affirm substantially for the reasons

13

set forth in Judge James Ferrelli's comprehensive and well-reasoned written opinion.

A. Judicial Estoppel.

On August 28, 2015, counsel for the Phillipses represented to Judge Smith that a "more intensive" inspection process had taken place on the Property, which included environmental inspections, and the concerning condition had been remediated satisfactorily. In the 2016 Chancery Division case, plaintiff sought to enforce the "as is" purchase of the Property. Then, in the 2017-2018 Law Division case, Judge Claypoole found that the Phillipses were taking a different position than they had previously taken as to the environmental issues on the Property. In 2023, as Judge Ferrelli held, no new information was proffered to warrant reopening the issue.

To allow plaintiff's subsequent inconsistent position would "result in a miscarriage of justice." Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 608 (App. Div. 2000). We are satisfied that Judge Ferrelli did not abuse his discretion in applying the doctrine of judicial estoppel to the present environmental claims plaintiff was attempting to assert.

B. Res Judicata, Collateral Estoppel and the Entire Controversy Doctrines.

14

The essence of the doctrines of res judicata, collateral estoppel and the entire controversy doctrines serve "the salutary purpose of preventing re-litigation of the same controversy between the same parties." In re Est. of Gabrellian, 372 N.J. Super. 432, 446 (App. Div. 2004) (citing Brookshire Equities, LLC v. Montaquiza, 346 N.J. Super. 310, 318 (App. Div. 2002)). Based upon our de novo review of the pleadings and motion record, we discern no error in Judge Ferrelli's conclusion that the claims against the Puglias are barred by res judicata, collateral estoppel and the entire controversy doctrines.

In the 2016 Chancery Division case, the Phillipses requested that the chancery court order the Administrator to perform environmental inspections of the disputed property. In an April 8, 2016 order and accompanying statement of reasons, the court denied this request, specifically holding that the Administrator "was under no obligation to remediate any perceived [environmental] defects with the Real Property or permit any more inspections prior to the closing of the sale." The court made several findings based upon its analysis of the January 2015 Contract between the Phillipses and the Estate: (1) "[t]he Property was sold to the Phillipses in 'as is' condition and the contract expressly reserved the right of the Administrator to refuse to perform any remediation based on any perceived defect in the Property[;]" (2) "[b]y a plain reading of the January 2015 Contract,

15

[the Administrator] was under no obligation to cure any perceived defects of the Property[;]" and (3) "[the Administrator] was under no obligation to perform the requested remediation and the January 2015 Contract remains enforceable."

In the 2018 Law Division case, the Phillipses sought to amend their pleadings to add five claims related to the condition of the Property. Judge Claypoole found that "four out of the five claims proposed by [the Phillipses] in their amended [c]ross-claims against defendant Estate had been dismissed with prejudice by this [c]ourt's May 16, 2017 Order." Judge Claypoole further found that the "fifth claim proposed by [the Phillipses] against the Estate and claims [the Phillipses] have proposed against [Brian and Arthur Puglia] are related to the Spill Act…[and] this [c]ourt is not satisfied that [the Phillipses] have presented any new information with regard to these claims . . . ."

Plaintiff contends that the 2016 Chancery Division ruling only dealt with a request for injunctive relief and did not address the merits of the request for monetary damages. Therefore, plaintiff argues that no defendants were relieved of liability for any environmental claims. This argument is not supported by the record.

The 2016 Chancery Division and the 2018 Law Division orders are valid, final orders that addressed the merits of the Phillipses' environmental claims

16

against the Puglias. These environmental claims have been at the forefront of every case involving this family's dispute over their late mother's Property.

The issues and causes of action in both cases were essentially the same; namely, a dispute over the condition of the Property after the tenants, the Puglias were evicted. Moreover, the claim arises out of the same transaction as the prior claims, which is the "as is" January 2015 Contract for the purchase of the Property. The 2018 Law Division case proceeded after the "as is" sale of the Property. Even though plaintiff identified the claims as Spill Act claims, Judge Claypoole correctly recognized that no new information was presented regarding these claims, and as result, relying on the doctrine of res judicata, she barred the claims.

The parties in the present case are the same as in all prior proceedings. Privity exists when the relationship between the parties "is close enough" so that one party "include[s] [the] other within the res judicata." Zirger v. Gen. Accident. Ins. Co., 144 N.J. 327, 338 (1996); see also State v. Brown, 394 N.J. Super. 492, 503 (App. Div. 2007) (adopting the same definition of privity). The Phillipses are the sole principals of RAP Farm Enterprises. Thus, the Phillipses' attempt to amend their complaint and substitute RAP, does not change the similarity of the parties because privity exists between RAP and the Phillipses.

 A-0967-23

In sum, we are satisfied that Judge Ferrelli correctly concluded that the doctrines of res judicata, collateral estoppel and entire controversy bar the present claims.

III.

Judge Ferrelli also properly denied plaintiff's motion to amend the complaint because the proposed amendments were not sustainable as a matter of law. While a motion to amend a complaint should generally be liberally granted, "[c]ourts are free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law." Prime Acct. Dep't v. Twp. of Carney's Point, 212 N.J. 493, 511 (2013) (quoting Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006)).

The May 12, 2022 settlement agreement entered by Rosemaria Phillips and the other parties stated that its effects would be "binding on the named parties, their spouses, heirs, successors and assigns." RAP Farm Enterprises LLC is protected by the terms of the consent judgment, because it is an "assign" of Rosemaria Phillips.

An "assign" is defined as "all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent or act of law." Packanack Lake Country Club & Cmty. Ass'n v. Alexander D. Doig

A-0967-23

<u>Dev. Co.</u>, 72 N.J. Super. 360, 366 (Ch. Div. 1962). As the record reflects, Rosemaria Phillips, and more specifically the Phillipses, deeded the disputed property to RAP Farm Enterprises LLC on August 24, 2016. Thus, RAP Farm Enterprises LLC falls squarely under the definition of an "assign" and is consequently covered by the terms of the consent judgment. Therefore, we discern no basis to disturb Judge Ferrelli's decision.

To the extent we have not addressed any of plaintiff's remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0967-23